## LIABILITY OF LANDLORD FOR INJURY TO TENANT FROM EXPLOSION ON ADJOINING PREMISES.

Circuit Court of Cuyahoga County.

ISAAC BRUDNO v. JENNIE F. MILLER.

Decided, February 23, 1907.

*Landlord and Tenant—Explosives—When Landlord is Liable to Tenant for Injury Caused by Explosives of Another Tenant.*

Where a landlord knows, or ought to have known, that a tenant is engaged in the manufacture of dangerous explosives, and rents adjoining premises to plaintiff as a residence, representing the business carried on in the adjoining building as of a harmless character and of a totally different nature from that which he knows it to be, he is liable for damages to plaintiff caused by an explosion in the adjoining premises.

MARVIN, J. (orally) ; TAGGART, J., and DONAHUE, J. (sitting in place of Judges Winch and Henry), concur.

Jennie F. Miller brought suit against Isaac Brudno for injuries which she sustained on the 2d day of May, 1903. At that time Brudno was the owner of real estate in this city fronting on Case avenue, and also on Orange street. On the Case avenue front were some old buildings, at the rear of which he erected an apartment house, and on the Orange street property was an old building on the Orange street front, which was used as a factory for the manufacture of torpedoes, such as children use for Fourth of July celebrations. Mrs. Miller became a tenant of this property on the 27th day of April, 1903; that is, she became a tenant of the apartment house by taking or renting a suite of rooms in it. The apartment house is situated but a few feet from the torpedo factory. On the 2d of May, an explosion occurred in the torpedo factory which wrecked the building in which Mrs. Miller was a tenant and by which she received bodily injury.

Thereafter, Mrs. Miller instituted an action against Brudno, charging that he maintained a nuisance in this factory; that is

to say, that he carried on a dangerous business in the factory, and she charged also that she was induced by the fraud and deceit of Brudno to lease the apartment which she did lease in the apartment house, and that fraud and deceit, she says, existed in his representing to her that the business there carried on was the manufacturing of candy.

Brudno denied that the factory was a nuisance or that the business was in itself dangerous; that is, he made a general denial, after admitting the ownership of the property and the explosion; but he shows that he purchased this property where the factory is, the fall before the explosion occurred, and he erected the building in which Mrs. Miller became a tenant shortly before she moved into the suite which she had rented of him, so that the building was quite new at such time. The deed to the property on which the factory was, he received, as I remember, in January, 1903, and prior to that time he had had a preliminary conversation, of course, with the owner of the property, and had been notified by him that the Thor Manufacturing Company were carrying on a business in this factory and that they must be permitted to remain, or ought to be permitted to remain, and he agreed that they might remain, if he could arrange with them on the terms which he desired, or that would be satisfactory to him. But he says that he had no thought that the business was a dangerous business and that he did not know what the business was.

Upon the trial the evidence on the part of the plaintiff was, first, there was no question about the explosion taking place, as charged, and that the plaintiff was injured by the explosion, for when the explosion took place in this factory it was a very forcible explosion and injured the buildings around and injured this woman. But the men who carried on the business, known as the Thor Manufacturing Company, to-wit, one Silas H. Cole, and one Joseph G. Raquette, say they did not know that the business was dangerous, and they give the ingredients used in the manufacture of these torpedoes, the ingredients being sulphur, potash, sand and a glutinous substance, the name of which I do not recollect, none of which ingredients in and of itself is an explosive substance, and it is urged that it was not known

that the combining of these ingredients in any particular ratio would result in making the substance thus made up of these ingredients an explosive substance. But upon that the evidence is that the very purpose of the manufacture of these torpedoes for the use for which they were to be put, or known to be put was, that they would explode in coming in contact with a hard substance. They are those torpedoes we have seen boys use in connection with canes made for the purpose, to strike upon the sidewalk when celebrating the Fourth of July, and so it *was* known that these ingredients, when combined, would produce a substance that would explode and though they may not have known what the chemical result of the combining would be, yet that they did know that under certain conditions it would be explosive, is very apparent, so that one might well conclude that if the small pellets which were made for the use above referred to in connection with Fourth of July celebrations would explode with a loud noise, that in greater quantities the explosion would be greater. · But Mr. Brudno says that he did not know even what the business was. But he was often near the factory and about the factory. Perhaps I ought to say before I come to this, that the agreement made between the party then owning the premises and Brudno was not a distinct and definite agreement that the Thor Manufacturing Company was to remain there under any lease with the vendor, but they were to remain there for the summer, if the terms could be agreed upon between Brudno and the Thor Manufacturing Company, which were satisfactory to Brudno, and they did carry on their business during that following summer, and there was an interview in the court house, or perhaps two or three, between the parties, with the result that the company might remain there at $25 a month, although under an agreement with their previous owner, the amount was much less. And, from the 1st day of January, 1903, they paid rent to Brudno at the rate of $25 per month, but Brudno says he did not know what their business was, and he made no effort to find out.

The evidence of Cole and of his partner Raquette is, that they exploded some of these torpedoes every day in the factory to see if they exploded right, and that Brudno was (Raquette says),

in the factory a good many times, but he is not sure that they
ever exploded any in his presence. Brudno says that is not
true.

Mrs. Miller, the plaintiff below, and a Mrs. Cooper testified
that on the day that Mrs. Miller rented these apartments they
went together to the apartments, that they met Brudno on Or-
ange street, and they gave the direction in which they traveled
to reach the apartment house. To do that, they passed by the
factory, and they say that they then saw these little pellets,
which are explosive, some of them lying out to dry; at least
out in the sun, and Mrs. Miller says she asked what business was
there carried on, and that Brudno said, "it is a candy factory."
Mrs. Cooper says that Mrs. Miller asked her what the business
was, and she said, "it looks like candy," and that Brudno said,
"Yes, it is a candy factory."

If that is true and the jury believed that to be true, it is
some evidence tending to show that Brudno knew that there was
something carried on there that he did not want to tell about.
For, if he knew nothing about it then he would not be justified
in saying that it was a candy factory and if he knew what the
business was, he was telling an untruth when he said that it
was a candy factory, which tended to show that there was some-
thing there or some business carried on there that he did not
want to disclose. But, it is said that it can not be true, that is
the story told by Mrs. Miller and Mrs. Cooper, because there
was a fence which obstructed their view of these pellets, a high
fence that was between them and the factory, and they could
not see these pellets, which they testify they were told was
candy; and it is true that there was a fence there, which they
passed to go over to the building in which the apartments were;
at least the evidence is pretty strong that that fence was there.
But the jury evidently believed that whether there was a fence
there or not, these women had the talk they say they had with
Brudno, and he told them that there was a candy factory being
carried on there, and they believed, from the evidence, that he
had knowledge of what the business was that was carried on
there. It is said, however, that since this was not known to be
a dangerously explosive substance that he (Brudno) ought not

to be held responsible, but that if he knew that it was an explosive substance in small quantities, it would produce more noise than is produced by these torpedoes, it was evidence that ought to have put him on his guard, if he knew that much about it, to find out whether in larger quantities it would be dangerous. The court gave the jury a perfectly fair charge as to the defendant below, guarding his rights so well that complaint is not made of what the court said, and we think the jury might well have reached the conclusion that they did, that this was very dangerous business, and that torpedoes were made at that factory for the purpose of exploding, and a knowledge of these facts was sufficient to put upon guard the owner who rented the premises immediately adjacent to this factory, and we believe if they did, and they might well have believed the story of Mrs. Miller and Mrs. Cooper, that Brudno representing it to be a candy factory indicated that he intended and that he recognized there was that about the business which he would not disclose, or did not want to disclose.

We find no error in the record of this case, and the judgment is affirmed.